FRANCES HELENE HEFT *vs.* MARY JOSEPHINE M. HEFT,
ADMINISTRATRIX, ET ALS.

Third Judicial District, Bridgeport, October Term, 1916.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The plaintiff sought to secure the alteration of a divorce decree rendered in 1903 by increasing the amount of alimony ($20,000) which was then awarded her, upon the alleged ground that her husband instead of then being worth only $100,000, as found by the committee, was in reality worth more than $600,000, a fact which he by fraud and misrepresentation concealed. *Held* that the evidence of the plaintiff in respect to the valuation of her husband's property in 1903 was so remote, vague and uncertain, that a trier could not reasonably reach a conclusion of value materially different from that to which the committee came; and certainly such evidence could not reasonably furnish a basis for a finding of fraud and misrepresentation.

Argued November 1st—decided December 19th, 1916.

SUIT to secure the alteration of a judgment of divorce rendered in January, 1903, by increasing the amount of alimony awarded therein to the plaintiff, upon the alleged ground that such amount was procured through the fraudulent representations and concealment of the respondent in that case, brought to the Superior Court in Fairfield County where the plaintiff was nonsuited in a trial to the court, *Webb, J.,* and from the court's refusal to set aside this judgment the plaintiff appealed. *No error.*

The plaintiff and Nathan H. Heft, now deceased, intermarried February 22d, 1873. In 1902 the plaintiff began proceedings to procure a divorce from her husband and an allowance out of his estate by way of alimony. The defendant having appeared, the cause was referred to a committee to report the facts. The committee reported that the plaintiff was entitled to a

divorce, that the defendant was the owner of estate to the value of $100,000, and that a reasonable portion thereof to assign to the plaintiff was $20,000. The report was accepted and judgment entered in accordance therewith on the 16th day of January, 1903.

The present proceeding seeks a modification of that judgment in so far as the allowance is concerned, and a substantial increase of its amount. It alleges that in the divorce proceedings Mr. Heft fraudulently concealed the true value of his estate, and fraudulently produced such evidence as induced the court to find that he was possessed of estate to the value of $100,000 and to make an allowance to the plaintiff of $20,000, whereas his estate was in fact of the value of upward of $600,000 and the plaintiff was entitled to an allowance of at least $150,000. It also alleges that she was ignorant of the true value of his estate until on or about July 27th, 1915, when, he having died, the inventory of his estate was filed in the Court of Probate.

The defendant makes answer denying all the essential allegations of the complaint and setting up three special defenses, to wit, (1) that the right of action for the cause stated in the complaint did not accrue within six years next before the commencement of the action, (2) that the plaintiff was guilty of laches in not commencing her action at an earlier date, and (3) one of estoppel arising out of conduct subsequent to the divorce judgment, the details of which are not here involved.

At the time of the hearing counsel for each of the parties in the divorce proceeding was dead, and no evidence was offered as to how or upon what testimony, if any, the committee in those proceedings arrived at his valuation of the defendant's estate, or his finding in the matter of the allowance. It did not appear that Mr. Heft testified before the committee, or that either

he or his counsel made any statements or representations in respect to his property. The claim of the plaintiff in respect to this feature of the case was that such evidence was unnecessary since the relation of Mr. Heft to his wife, as respects his property, which the wife testified was all accumulated during the existence of their marriage relation, was substantially that of a trustee to *cestui que trust,* and therefore such that any failure on his part to disclose its amount, when the question of the allowance to be made to her was under adjudication, was in law a fraudulent concealment.

During the trial the facts relied upon by the defendants, in support of their defense of estoppel, were brought out upon cross-examination of the plaintiff. As that evidence had no bearing upon the action of the court in granting the nonsuit, and can have none upon the question presented in this court, it need not be stated. The court based its action entirely upon the plaintiff's failure to present a prima facie case by reason of her failure to produce substantial evidence in support of her allegations that the respondent's estate, at the time that the divorce judgment was entered, was of the alleged value of $600,000, or of any other value substantially in excess of $100,000. The evidence bearing upon that subject is fully summarized in the opinion.

*Robert E. DeForest* and *William B. Stoddard,* for the appellant (plaintiff).

*John S. Pullman,* for the appellees (defendants).

PER CURIAM. The plaintiff's case, upon the evidence she presented, hangs by so slender a thread that we may, for our present purpose, disregard the questions of law which its determination might, under other circumstances, involve, and also the rulings excluding

testimony offered by the plaintiff which are complained of.    ·

The complaint alleges that at the time of the plaintiff's divorce from her husband he was possessed of an estate of the value of more than $600,000.    It was essential to the success of her cause that she establish that at that time he was possessed of estate having that value or some other value substantially in excess of $100,000.    Taking into account all the evidence she offered in her attempt to do this, whether received or excluded, and giving it the fullest effect which might reasonably be claimed for it in the establishment of subordinate facts, we find that her proof was confined to the following: (1) that he then owned real estate worth from $65,000 to $75,000; (2) that there stood in his name upon the books of the Greenwich Tramway Company, a street railway corporation promoted, controlled and in the process of construction by him, 1,015 shares of its capital stock, then either 1,250 or 3,000 in the whole, and of the par value of $100 per share, and upon the books of the New York and Stamford Street Railway Company, a corporation in like manner promoted, controlled and in the process of construction by him, 4,635 of the 5,000 shares of its capital stock, likewise of the par value of $100 per share; (3) that the report made in 1902 by the former corporation to the Railroad Commissioners of this State, states that the 1,250 shares then constituting its entire capital were issued for cash paid in, that its report for 1903 states that an additional 1,750 shares had been issued on account of construction and that its capital was unimpaired, and that the report filed by the latter corporation with the Railroad Commissioners of New York in the same year made, as it may for present purposes be assumed, although it was excluded and its contents are not disclosed in the record, an equally favorable

showing for that corporation; (4) that in 1905, two years subsequent to the divorce, he consummated a deal with the New York, New Haven and Hartford Railroad Company, whereby he exchanged 2,798 shares of the Greenwich Tramway Company (a portion of that amount being of an issue subsequent to the divorce) and 4,586 shares of the New York and Stamford Street Railway Company for the Consolidated Railway Company's four per cent debentures of the par value of $880,375 and $40,000 in cash, the stock in each case being figured in the trade at $125 a share; and (5) that the inventory and appraisal of his estate at his death in 1915, made in the course of its settlement in the Court of Probate, shows that he then owned personal property valued at approximately $300,000 and including 186 Consolidated Railway debentures valued at about $126,000, of which three, with other property, were pledged as a collateral for a loan of $32,500.

There was no evidence of the market value of these stocks at any time, and no attempt was made to produce the testimony of financial experts or of other persons presumably having knowledge upon that subject. The same was true of the debentures for which they were exchanged. There was no evidence tending to show whether Mr. Heft's ownership, as it appeared upon the books of the company, represented actual ownership by him in his own right or was a holding for others interested in the promotion of the corporations and construction of the roads. There was none which threw any light upon his indebtedness, outstanding loans or hypothecations at the time the stocks stood in his name, or for that matter at any time down to that of his death, when it appeared that a portion of his estate was pledged for a loan of $32,500. What the condition of his affairs in this respect was twelve years previous, the evidence contained nothing to disclose.

The plaintiff, in the presentation and support of her prima facie case, was thus obliged to rely for proof of her allegations as to her former husband's ownership of estate upon a succession of dependent inferences several of which, to say the least, are too violent and contrary to the teachings of experience to be drawn, even were the underlying facts beyond question.  Here the court was asked to draw them from facts not otherwise established than by unsupported evidence of doubtful probative value.  The question for the court upon this feature of the case was one as to the net amount of Mr. Heft's estate at the time of the divorce in January, 1903.  To arrive at a conclusion upon it favorable to the plaintiff, it was asked to infer that stocks standing in his name upon the books of the corporations were his in fact, that they represented an ownership free from liabilities, pledges or obligations, and that their value was something quite substantial for the reasons (1) that the capital which they represented had been largely paid in in cash, and that the corporations' official reports represented their capital unimpaired, (2) that he was able two years afterward to affect an exchange of them for certain debentures of assumed but unascertained value in a deal in which they were figured in the trade at a handsome valuation, and (3) that his estate twelve years afterward showed his ownership of a large amount of property, including a considerable amount of these same debentures, then valued at 68 or thereabouts.

Common knowledge of the ways of men and business methods in promotion enterprises, corporate management and financial operations, and of every day experience, tells every intelligent man that no one of these inferences could safely be drawn in any given case upon the evidence presented, unsupported by anything more definite and certain, and that the first two of them especially would have been wholly without warrant as

bases for judicial action. Property held does not signify property owned, nor property owned net assets, nor wealth to-day wealth twelve years back. Capital paid in does not spell capital stock unimpaired or valuable, nor do reports of financial condition furnish information to be accepted at its face value without further inquiry or other information. The prices at which properties are figured in an exchange are shadowy indications of real values, and the consideration which a railroad corporation may be willing to pay for lines or connections it wishes to own or control does not furnish a trustworthy indication of their real worth, much less their worth two years before when they were in the promotion stage.

Upon such evidence alone and unsupported by more definite proof, and by such processes of deduction only, a trier could not reasonably arrive at a conclusion that Mr. Heft, at the time of his divorce, was worth a substantial amount in excess of $100,000. He may have been, and one might guess that he was. But the evidence adduced to establish that fact left the matter at best in the field of conjecture. Certainly such proof could not reasonably furnish a basis for a finding of fraud and misrepresentation in stating otherwise, or in permitting a contrary statement to go unchallenged.

There is no error.